UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA GOYETTE LUCIANO-NORMAN,

                    Plaintiff,

v.                                          5:16-CV-1455
                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

Meggesto, Crossett Law Firm                 Kimberly Slimbaugh, ESQ.
  Counsel for Plaintiff
313 East Willow St., Ste. 201
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                 Ariella Zoltan, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

       This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 13.)  This case has proceeded in accordance with General

Order 18.

       Currently before the Court, in this Social Security action filed by Lisa Goyette

Luciano-Norman ("Plaintiff") against the Commissioner of Social Security ("Defendant"

or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings.  (Dkt. Nos. 9, 12.)  For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and denied in part, and Defendant's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1961.  (T. 96.)  She has a master's degree in social work. (T. 71.)  Generally, Plaintiff's alleged disability consists of arthritis, fibromyalgia, lupus, herniated discs, anxiety, depression, and agoraphobia.  (T. 274.)  Her alleged disability onset date is April 15, 2011. (T. 96.)  Her date last insured is December 31, 2016.  (T. 96.)  She previously worked as a social worker.  (T. 276.)

### B.    Procedural History

On November 4, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 114.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 23, 2015 and again on October 23, 2015, Plaintiff appeared *pro se* before the ALJ, Paul Greenberg.  (T. 41-50, 51-95.)  On February 24, 2016, ALJ Greenberg issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 18-38.)  On October 21, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 23-34.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017. (T. 23.) The ALJ determined that subsequent to Plaintiff's alleged onset date of April 15, 2011, she appeared to have engaged in substantial gainful activity from March 2013 to June 2013, January 2014 to August 2014, and May 2015 to July 2015. (*Id.*) Plaintiff testified that during those periods some of her earnings were from long term disability benefits. (T. 24.) The ALJ determined that in light of his unfavorable determination at step four, it was unnecessary for him to reach a definitive finding regarding substantial gainful activity periods at step one. (*Id.*) Second, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, degenerative disc disease, arthritis, obesity, anxiety disorder, and affective disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 26-28.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (T. 28.)[1] The ALJ further found Plaintiff could: occasionally balance, kneel, crouch, crawl, and climb ramps and stairs; could not climb ladders, ropes, or scaffolds; must avoid concentrated exposure to unprotected heights and moving mechanical parts; and could not operate motorized equipment. (*Id.*) The ALJ determined Plaintiff could perform jobs with occasional contact with the public and defined public as strangers not including counseling clients or individuals

---

[1]      Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

encountered over the telephone.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was

capable of performing her past relevant work as a social worker, job counselor, and

telephone salesperson.  (T. 33.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes seven separate arguments in support of her motion for judgment

on the pleadings.  First, Plaintiff argues the ALJ failed to advise Plaintiff of the impact of

her employment on her claim for disability and failed to consider whether Plaintiff was

entitled to a closed period of disability inclusive of the trial work from April 15, 2011 to

June 30, 2014.  (Dkt. No. 9 at 8-9 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the AC

failed to consider the opinion of Plaintiff's treating rheumatologist, Hom Neupane, M.D.

(*Id.* at 10.)  Third, Plaintiff argues the ALJ failed to properly assess the weight of the

opinion of Plaintiff's treating providers, Matt Estill, M.D. and Stephen Tien, Ph.D.  (*Id.* at

11-14.)  Fourth, Plaintiff argues the ALJ failed to fully develop the record.  (*Id.* at 14-16.)

Fifth, Plaintiff argues the ALJ substituted his own opinion regarding Plaintiff's limitations

for those of her treating providers.  (*Id.* at 16-17.)  Sixth, Plaintiff argues the ALJ failed to

identify limitations imposed by Plaintiff's obesity.  (*Id.* at 17-18.)  Seventh, and lastly,

Plaintiff argues the ALJ failed to properly assess Plaintiff's credibility.  (*Id.* at 18-22.)

### B.     Defendant's Arguments

In response, Defendant makes seven arguments.  First, Defendant argues

Plaintiff's argument regarding her earnings is moot.  (Dkt. No. 12 at 5-6 [Def.'s Mem. of

Law].)  Second, Defendant argues the AC did not fail to consider evidence.  (*Id.* at 6-7.)

Third, Defendant argues the ALJ properly assessed treating source opinions.  (*Id.* at 7-

12.)  Fourth, Defendant argues the ALJ properly assessed Plaintiff's RFC.  (*Id.* at 12-13.)  Fifth, Defendant argues the ALJ fulfilled his duty to develop the record.  (*Id.* at 13-14.)  Sixth, Defendant argues the ALJ properly considered Plaintiff's obesity.  (*Id.* at 14-15.)  Seventh, and lastly, Defendant argues the ALJ's credibility assessment was supported by substantial evidence.  (*Id.* at 15-19.)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner.

### A.  The ALJ's Weighing of the Medical Opinion Evidence

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[2]; *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv).  The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221

---

[2]      Effective March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 have been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

### i.) Dr. Tien

Plaintiff received mental health counseling from Dr. Tien.  Dr. Tien provided a medical source statement and testified at Plaintiff's hearing; however, Dr. Tien's treatment notations were not in the record.  (T. 56-61, 484-489.)  In his medical source statement, Dr. Tien indicated that he treated Plaintiff once to three times a week since January 6, 2014.  (T. 484.)  Of note, Dr. Tien testified at the hearing that his first session with Plaintiff was August 20, 2013.  (T. 57.)

Dr. Tien reported in his medical source statement that due to her panic attacks, insomnia, dysphoria, and agoraphobia Plaintiff had work related limitations.  (T. 486-487.)  He opined Plaintiff was "limited but satisfactory" in her ability to: understand and remember very short and simple instructions; carry out very short and simple instructions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.  (T. 486-487.)

Dr. Tien opined Plaintiff was "seriously limited, but not precluded" in her ability to: remember work-like procedures; maintain attention for two hours segments; make

simple work-related decisions; carry out detailed instructions; set realistic goals or make plans independently of others; and travel in unfamiliar places. (T. 486-487.)

Dr. Tien opined Plaintiff was "unable to meet competitive standards" in her ability to: maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; deal with stress of semiskilled and skilled work; and use public transportation. (T. 486-487.)

Dr. Tien further opined that on average Plaintiff would be absent more than four days per month, her impairment has lasted (or is expected to last) more than twelve months, she was not a malingerer, and her impairments were reasonably consistent with her symptoms and functional limitations described in his medical source statement. (T. 489.)

At the hearing, Dr. Tien testified that Plaintiff's mental impairments interfered with her ability to concentration, work, and "just carry out tasks in general." (T. 58.) The ALJ inquired whether Dr. Tien had seen improvement in Plaintiff's condition since he began treating her. (T. 59.) Dr. Tien stated that Plaintiff had "ups and downs" and there had been a "series of improvements" during which she was well enough to return to work on a part-time basis. (*Id*.) However, Dr. Tien stated that Plaintiff's symptoms would return due to stress and she would again become unable to work. (*Id*.) He testified that he witnessed this "cycle" for a "couple [of] years." (*Id*.) Dr. Tien testified that in his opinion Plaintiff's symptoms would never completely resolve. (*Id*.)

When asked if there any particular types of jobs Plaintiff would be more likely to be able to do, Dr. Tien stated that Plaintiff would have "great difficulty working in any kind of competitive work environment, having to work with other people, anywhere near full-time thing, having to deal with structure, basic work structure and so on, [. . .] would be very difficult." (T. 59.)

The ALJ afforded Dr. Tien's medical source statement "limited weight." (T. 32.) The ALJ stated that Dr. Tien's assessment "substantially overstat[ed]" Plaintiff's impairments, especially in light of her ability to perform work after the alleged onset date. (*Id.*)

Plaintiff argues that the ALJ failed to properly weigh Dr. Tien's opinion. (Dkt. No. 9 at 13-14 [Pl.'s Mem. of Law].) Defendant counters that the ALJ properly concluded that Dr. Tien's opinion were "inconsistent with the evidence of record" and not supported by treatment notations in the record. (Dkt. No. 12 at 10-11 [Def.'s Mem. of Law].) However, contrary to Defendant's assertion, the ALJ did not conclude that the doctor's opinion was inconsistent with the medical record or treatment notations. The ALJ concluded, without further discussion, that the doctor's opinion was inconsistent with Plaintiff's ability to work after the alleged onset date.

To be sure, where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Here, the ALJ erred in his

evaluation of Dr. Tien's opinion because he relied only on Dr. Tien's statement in the very narrow context of Plaintiff's work after her alleged onset date.  There was no discussion of the opinion in the framework of the medical evidence in the record, or under any of the factors outlined in the Regulations.

Further, the ALJ appears to have mischaracterized Plaintiff's work after her alleged onset date.  The ALJ afforded Dr. Tien's opinion reduced weight because Plaintiff worked after her alleged onset date; however, based on the evidence in the record it appears that Plaintiff's work was part-time and she was unable to successfully maintain work.  First, Dr. Tien testified that Plaintiff had a series of improvements during which she was well enough to work; however, her symptoms exacerbated under stress and became so serious that she could not continue to work.  (T. 59.)  Dr. Tien clearly stated that Plaintiff had periods of ups and downs and he had witnessed her cycles in the course of treatment.  (*Id.*)  The ALJ failed to account for Dr. Tien's explanation.  Second, Plaintiff worked for a brief period after her date last insured; however, she indicated that she ended her employment because of her panic attacks and other mental health symptoms.  (T. 72-82, 260.)  Therefore, it is not clear from the ALJ's decision how Dr. Tien's opinion was inconsistent for Plaintiff's attempts to work.  Dr. Tien testified that Plaintiff's condition improved to the point where she could work, only to have her symptoms exacerbated by the stress of work, and Plaintiff testified that she ended her work due to an increase in panic attacks and mental health symptoms.  It is therefore recommended that this matter be remanded for a proper evaluation of Dr. Tien's medical source statement and testimony.

Plaintiff makes the corollary argument that the ALJ should have requested Dr. Tien's treatment records.  (Dkt. No. 9 at 15 [Pl.'s Mem. of Law].)

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and brackets omitted).  An ALJ need not, however, seek additional detail from a given provider if the record contains notes from that provider "adequate for the ALJ to determine [the plaintiff's] disability." *Whipple v. Astrue,* 479 F. App'x. 367, 370 (2d Cir. 2012).

The ALJ noted that Dr. Tien's treatment notations were not in the record and noted that he considered his testimony.  (T. 30.)  Although Dr. Tien provided a medical source statement and testified at the hearing, the record did not contain any treatment notations.  Because remand is recommended for a proper evaluation of Dr. Tien's medical source statement, it is also recommended that a request be made for his treatment records.

### ii.)    Dr. Estill

Plaintiff received her primary care and medications from Dr. Estill with the Guthrie Clinic.  On October 22, 2015, Dr. Estill completed a medical source statement.  (T. 497-505.)  He indicated he began treating Plaintiff on September 30, 2014.  (T. 497.)  Dr. Estill listed Plaintiff's diagnosis as depression with anxiety, panic disorder, and fibromyalgia.  (*Id.*)  Dr. Estill indicated that Plaintiff's depression/anxiety had a less than 40% response to treatment and her fibromyalgia had no response to treatment.  (T.

499.)  He opined her impairments would produce good days and bad days.  (*Id.*)  When asked what activities aggravated Plaintiff's conditions, Dr. Estill wrote "sitting or walking [greater than] 15 mins, lifting, bending, twisting, carrying."  (*Id.*)

Dr. Estill also provided specific functional limitations.  He opined Plaintiff could continuously lift and carry less than ten pounds and could not consistently lift and carry more than twenty pounds.  (T. 501.)  Dr. Estill opined Plaintiff could walk for approximately ten minutes or two blocks.  (*Id.*)  He opined Plaintiff could continuously sit for 15 minutes and continuously stand/walk for 15 minutes.  (T. 501-502.)  Dr. Estill indicated Plaintiff could sit for less than one hour total in an eight hour workday and stand/walk for less than two hours total in an eight hour work day.  (T. 502.)  He opined Plaintiff would need to take unscheduled breaks for thirty minutes.  (*Id.*)  He opined she was limited in her lower extremities due to back pain.  (T. 502.)  He opined Plaintiff should never: climb; balance; kneel; crouch; crawl; stoop; or bend and twist.  (T. 503.)  Dr. Estill opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations.  (T. 503-504.)  He opined that Plaintiff's emotional symptomology would "constantly" interfere with attention and concentration.  (T. 505.)  He opined Plaintiff had a "severe" limitation (frequently interrupted performance, for more than ½ hour each time) in her ability to deal with work stress.  (*Id.*)

The ALJ afforded Dr. Estill's opinion "little weight."  (T. 31.)  In doing so, the ALJ reasoned that the "extraordinary limitations" he provided on a "checklist form" were not consistent with his treatment records or the overall medical evidence.  (*Id.*)  The ALJ further reasoned that the "checklist" form provided little insight into how he reached his decision and was therefore of limited value.  (*Id.*)

Plaintiff makes the general argument, without citation to the record, that Dr. Estill's opinion was entitled to more weight because he was a treating provider, his findings were supported by treatment notations and examinations, and he provided adequate explanation for his opinions.  (Dkt. No. 9 at 12 [Pl.'s Mem. of Law].) Defendant asserts that the ALJ afforded appropriate weight to Dr. Estill's opinion because the ALJ reasonably determined that his opinion was inconsistent with the evidence of the record.  (Dkt. No. 12 at 9-10 [Def.'s Mem. of Law].)

Here, the ALJ provided good reasons for affording "little weight" to Dr. Estill's opinion.  Namely, Dr. Estill's exertional limitations were inconsistent with other medical evidence in the record and inconsistent with this treatment notations.  *See Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (ALJ properly pointed to substantial evidence for giving less than controlling weight to treating source where restrictive assessment was inconsistent with treatment notes, other medical sources, and plaintiff's testimony); *see Camille v. Colvin*, 652 F. App'x (2d Cir. 2016) (ALJ provided "good reasons" for affording treating source's opinion limited weight, including the opinion conflicted with provider's notes and was provided on a 'check-box' form requested narrative explanation which provider declined to provide).

The ALJ thoroughly outlined Dr. Estill's opinion and treatment notations from the Guthrie Clinic, as well as other medical evidence in the record from treating and non-treating sources, which he concluded was inconsistent with Dr. Estill's limitations.  (T. 29-31.)  Indeed, consultative examiner, Look Persaud, M.D., opined that Plaintiff had no restrictions in sitting, standing, or walking.  (T. 471.)  Further, objective imaging of Plaintiff's lumbar spine revealed minimal left paracentral bulging.  (T. 511.)

In addition, Dr. Persaud's opinion that Plaintiff had "moderate to marked" restrictions for lifting, carrying, pushing, and pulling (T. 471) and Dr. Estill's opinion that Plaintiff could continuously lift less than ten pounds and never more than 20 pounds (T. 501) was consistent with the requirements of sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (sedentary work involves lifting no more than 10 pounds at a time). Therefore, the ALJ properly weighed Dr. Estill's medical opinion. However, because remand is recommended for a proper evaluation of Dr. Tien's opinion, this recommendation should not be read as to preclude a reevaluation of Dr. Estill's opinion.

Plaintiff further argues that the ALJ failed to develop the record because he did not request updated treatment notations from Dr. Estill. (Dkt. No. 9 at 16 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit. In a letter dated October 29, 2015, six days after Plaintiff's hearing, the Administration requested "all medical records from 01/01/2010 to present" from Dr. Estill's practice, The Guthrie Clinic. (T. 565.) The Guthrie Clinic provided such records. (T. 571-745.) Therefore, the ALJ fulfilled his duty to develop the record.

### B. Plaintiff's Remaining Arguments

### i.) Credibility

Plaintiff appears to argue that the ALJ committed legal error because he "refer[ed] to medical reports of the treating physicians that recommend[ed] that Plaintiff engage in exercise training, as indications that []Plaintiff was less disabled than she claim[ed]." (Dkt. No. 9 at 17 [Pl.'s Mem. of Law].) Plaintiff asserts that the ALJ exercised his own lay interpretation of this recommendation as proof Plaintiff was not disabled. (*Id.*)

To be sure, an ALJ is "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

Here, the ALJ did not impermissibly substitute his own lay opinion for that of a medical opinion, instead the ALJ properly took into consideration the recommendation that Plaintiff engage in exercise and strength training in making a determination that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms where not as severe as alleged. Contrary to Plaintiff's assertion, the ALJ did not refer to recommendations that she exercise as evidence that Plaintiff was "less disabled," but that Plaintiff was less credible.

In making a credibility determination, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain

or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

In making a credibility determination, the ALJ discussed treatment recommendations, including exercise and strength training.  (T. 30-31.)  Consideration of treatment modalities is proper in making a credibility determination under 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).  Therefore, the ALJ did not err in taking into consideration Plaintiff's treatment in making a credibility determination nor did the ALJ substitute his opinion for that of a medical source.

Plaintiff also argues that the ALJ erred in his credibility determination because Plaintiff suffers from fibromyalgia and since there are "no objective tests which can confirm the existence of fibromyalgia, none of these findings contradict the Plaintiff's testimony of the severity of her symptoms."  (Dkt. No. 9 at 20-21 [Pl.'s Mem. of Law].) However, a mere diagnosis of fibromyalgia, without a findings as to the severity of symptoms and limitations, does not mandate a finding of disability.  *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008).

Plaintiff further asserts that the ALJ misrepresented the evidence in the record in making his credibility determination.  (Dkt. No. 9 at 20-21 [Pl.'s Mem. of Law].)  Plaintiff contends that the ALJ attempted to "diminish" Plaintiff's fibromyalgia symptoms in stating that she had "mildly elevated CRP[3] as well as [sic] rate." (*Id.* at 20.)  However, the ALJ did not conclude that testing indicated mildly elevated CRP.  Here the ALJ

---

[3]     CRP stands for C-reactive protein.  Mayo Clinic, http://www.mayoclinic.org/tests-procedures/c-reactive-protein/basics/definition/prc-20014480 (last visited Sept. 8, 2017).

accurately outlined medical testing and evidence provided by Dr. Neupane in which Dr. Neupane described the results as "mildly elevated." (T. 29.) The ALJ also noted Dr. Neupane interpreted the findings as indicative of early rheumatoid arthritis and described her fibromyalgia as "very active." (*Id.*) The ALJ did not impermissibly interpret raw medical data, instead the ALJ provided an accurate summary of Dr. Neupane's findings.

Further, Plaintiff's argument that the ALJ drew a negative inference from her failure to take medication is without merit. (Dkt. No. 9 at 21 [Pl.'s Mem. of Law].) The ALJ accurately stated that Plaintiff was fearful of taking medication for her fibromyalgia and her reasoning for doing so was unclear. (T. 30.) There is no indication that the ALJ was, as Plaintiff asserts, "suggesting that her symptoms must not have been bad enough if she could tolerate them without medication." (Dkt. No. 9 at 21 [Pl.'s Mem. of Law].) Overall, in making his credibility assessment, the ALJ thoroughly and accurately outlined the medical opinion evidence in the record.

However, because remand is recommended for a proper evaluation of the medical opinion evidence in the record, remand is also recommended for a credibility determination in light of that evaluation.

### ii.) Obesity

Plaintiff argues that the ALJ failed to take into consideration the effects of Plaintiff's obesity in making his RFC determination. (Dkt. No. 9 at 17-18 [Pl.'s Mem. of Law].) To be sure, although the ALJ determined at step two that Plaintiff's obesity was a severe impairment, the ALJ did not specifically address obesity in step four or five. The ALJ stated in his opinion "although the evidence does not show that the claimant's

weight is itself disabling, alone or in combination with the claimant's other impairments, it significantly limits the claimant's ability to do basic work activities. My assessment of the claimant's [RFC] below considers this condition." (T. 26.)

First, an ALJ's decision "is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Second, the medical source evidence in the record, which the ALJ reviewed and relied on in making his RFC determination, provided notations and opinions that took into consideration Plaintiff's obesity. Therefore, there is no indication from the ALJ's determination that he failed to properly account for Plaintiff's obesity in his RFC determination.

### iii.) Closed Period of Disability

Plaintiff argues, without citation to any legal authority, that the ALJ committed legal error in failing to inquire as to whether Plaintiff wished to seek a closed period of disability. (Dkt. No. 9 at 8-10 [Pl.'s Mem. of Law].) To be sure, when dealing with a *pro se* plaintiff, the ALJ has "a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Jackson v. Berryhill*, 2017 WL 2399459 (2d Cir. June 2, 2017) (citing *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). However, the ALJ's role at the hearing does not elevate to that of legal counsel for Plaintiff. *See Richardson*, 402 U.S. at 410, ("The social security hearing examiner . . . does not act as counsel . . .[h]e acts as an examiner charged with developing the facts"). Overall, the Court need not, and will not, address this issue. Because remand is recommended for a proper evaluation of medical opinion evidence in the record, the ALJ may re-evaluate the impact, if any, of Plaintiff's work activity at step one. Further,

Plaintiff is now represented by counsel who can provide her with legal advice regarding any possible impact her employment may have on her application for benefits and the possibility of seeking a closed period of disability.

### iv.) Evidence Submitted to the AC

Lastly, Plaintiff argues that the AC failed to consider new and material evidence. (Dkt. No. 12 at 6-7 [Pl.'s Mem. of Law].) Plaintiff submitted a medical source statement dated June 26, 2016 from Hom Neupane, M.D. (T. 771-772.) Dr. Neupane's statement essentially stated that he was treating Plaintiff for rheumatoid arthritis and fibromyalgia, and Plaintiff suffered from joint pain, joint swelling, and muscle tenderness. (*Id.*) The statement did not contain an opinion regarding functional limitations. (*Id.*)

"[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision." *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996). Once evidence is added to the record, the AC must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b).

If the AC denies review of a case, the ALJ's decision, and not the AC's decision, is the final agency decision. *See Perez,* 77 F.3d at 44. When the AC denies review in a case, the review focuses on the ALJ's decision. *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015); *see* 42 U.S.C. § 405(g) ("Any individual, after any *final decision* of the Commissioner ..., may obtain a review of such decision by a civil action....").

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision. *See Perez,* 77 F.3d at 45. Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46; *Lesterhuis*, 805 F.3d at 87.

The ALJ will have before him on remand the evidence submitted to the AC, therefore, this Court need not address whether or not the evidence submitted to the AC was contrary to the weight of the evidence before the ALJ.

Plaintiff requests a remand for calculation of benefits, or in the alternative remand for additional proceedings. (Dkt. No. 9 at 22 [Pl.'s Mem. of Law].) Remand for calculation of benefits is not recommended. The Second Circuit has indicated that remand for further development of the record is warranted when there are gaps in the administrative record or the ALJ has applied an improper legal standard. *Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted).

A remand for calculation of benefits is warranted "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.3d 225, 235 (2d Cir. 1980); *accord, Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2002); *Rosa,* 168 F.3d at 83. For the reasons discussed herein, remand for further proceedings is recommended.

In sum, the ALJ failed to properly evaluate the medical opinion provided by Dr. Tien. Remand is recommended for a proper assessment of Dr. Tien's statement, to

obtain treatment notations from Dr. Tien, and for a new evaluation at the subsequent steps of the sequential process, and step one, as needed.

**ACCORDINGLY**, based on the findings above, it is

RECOMMENDED, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        September 11, 2017

William B. Mitchell Carter
U.S. Magistrate Judge